*In re* CUSTODY OF D.R. (Yvette Meeks, Petitioner-Appellant, and Martin Reynolds, Respondent-Appellee).

Second District   No. 2—97—0456

Opinion filed March 6, 1998.

Michael E. Marsh, of Law Offices of Michael E. Marsh, of Naperville, for appellant.

No brief filed for appellee.

Brad M. Swearingen, of North Aurora, guardian *ad litem*.

JUSTICE INGLIS delivered the opinion of the court:

Petitioner, Yvette Meeks, appeals the order of the circuit court of Kane County awarding custody of D.R. to respondent, Martin Reynolds. We affirm.

D.R. was born on June 25, 1986. On May 25, 1989, the trial court entered an order of parentage finding respondent to be D.R.'s father and requiring respondent to pay child support. D.R. resided with his mother from birth until 1994. Beginning in 1994, D.R. has occasionally resided with his father. Both parties have filed petitions to modify the level of child support since the trial court's original May 25, 1989, order.

On February 13, 1996, respondent filed a petition to change D.R.'s custody and to abate child support. At a March 6, 1996, hearing, both parties appeared in court *pro se* and advised the trial court that D.R. was living with respondent. The trial court continued respondent's petition to change custody, temporarily abated respondent's child support obligation, and appointed a guardian *ad litem* for D.R. On August 14, 1996, petitioner filed a motion to restore D.R.'s custody to her and to reinstate respondent's child support obligation.

At the September 4, 1996, hearing, petitioner informed the court that she did not return D.R. to respondent following a visitation. On September 11, 1996, the guardian *ad litem* gave his preliminary report to the court. The court awarded petitioner temporary physical possession of D.R., ordered visitation for respondent, and ordered both parties to cooperate with the guardian *ad litem*.

On October 24, 1996, the guardian *ad litem* filed his report with the court. At the status hearing that day, petitioner was found to be in direct criminal contempt of court as a result of her actions before the court and was placed in the county jail for 30 days. The trial court found that petitioner could not care for D.R. because of her incarceration and awarded respondent temporary custody with the requirement that D.R. continue his enrollment in Bardwell School in Aurora.

On November 27, 1996, petitioner filed an "Emergency Petition for Visitation." Respondent failed to appear for the hearing on the petition, and the court entered an order setting a visitation schedule for the Thanksgiving holiday through the middle of December.

On December 30, 1996, the trial court heard evidence on the parties' custody motions. On that date, D.R. was still residing with petitioner because she had failed to return the child after her scheduled visitation. Respondent was unable to recover the child even though he attempted to do so with the aid of the police.

On February 28, 1997, the trial court awarded custody of D.R. to respondent. The trial court based its decision on the best interests of D.R. as set forth in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/602 (West 1996)). The trial court found that, while there was evidence of respondent spanking D.R., respondent's home provided D.R. with structure and discipline. The court also found that D.R. fared better socially and academically there than when he was residing with his mother. Additionally, the trial court expressed concern over D.R.'s behavior mirroring that of petitioner, stating that petitioner was "an inappropriate role model." The court also found that respondent's testimony was significantly more credible than petitioner's and that petitioner was "a mother and custodial parent only when it suited her present whim."

On March 18, 1997, petitioner filed a motion to reconsider, which was denied. The same day, the court entered an order fixing petitioner's visitation. On April 7, 1997, the court entered an order requiring petitioner to pay respondent child support. Petitioner's timely appeal followed.

Initially, we note that respondent did not file a brief in this appeal. However, because the issues are straightforward, we can resolve them without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

Petitioner first contends that the trial court erred in modifying its original custody order. Petitioner argues that, in order to modify a custody order, the party seeking the modification must satisfy the requirements of section 610(b) of the Marriage Act (750 ILCS 5/610(b) (West 1996)) and show, by clear and convincing evidence, that a change in circumstances has occurred since the entry of the prior judgment. Petitioner asserts that respondent failed to demonstrate any change of her or D.R.'s circumstances, much less by clear and convincing evidence, and that, therefore, the trial court improperly changed D.R.'s custody to respondent.

■ Petitioner's argument is apparently based on section 14(a)(2) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/ 14(a)(2) (West 1996)). Section 14(a)(2) provides that "[i]f a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be

considered a judgment granting custody to the other parent." 750 ILCS 45/14(a)(2) (West 1996). As the May 25, 1989, judgment of paternity ordered respondent to pay child support, petitioner apparently views this as the original order of custody. The Parentage Act further provides that the trial court "has continuing jurisdiction to modify an order for support, custody or visitation included in a judgment entered under [the Parentage Act] *** in accordance with the relevant factors specified" in the Marriage Act. 750 ILCS 45/16 (West 1996). Thus, petitioner appears to conclude that section 610(b) of the Marriage Act controls the modification of the original custody judgment. Petitioner's argument, however, is premised on the assumption that section 14(a)(2) of the Parentage Act applies in this case.

The parentage action was instituted on April 3, 1989, and the judgment of parentage was entered on May 25, 1989. On August 30, 1989, the Parentage Act was amended to add section 14(a)(2). Before the amendment, section 14 of the Parentage Act did not make any provision for the custody of the child where the judgment lacked an explicit award of custody. Compare 750 ILCS 45/14(a) (West 1996) with Ill. Rev. Stat. 1987, ch. 40, par. 2514(a).

■■ The first issue we must address, therefore, is whether the amendment to the Parentage Act should apply retroactively to this case. Generally, amendments effecting a substantive change to the existing law are prospectively applied, while amendments changing procedural rights or remedies will be retroactively applied. *Harraz v. Snyder*, 283 Ill. App. 3d 254, 259 (1996). The presumptively prospective effect of a substantive amendment may be rebutted by the act itself. *Harraz*, 283 Ill. App. 3d at 260. We conclude that the amendment adding section 14(a)(2) to the Parentage Act must be given prospective effect. First, the amendment is substantive. Before the amendment, if the parentage judgment omitted mention of custody, no custody was established or presumed. After the amendment, custody is affirmatively granted to the parent receiving child support, even in the absence of an explicit reference to custody in the judgment of parentage. Thus, the amendment creates a new right where none existed before. Second, there is no indication in either the public act amending the statute or the language of the statute itself that the legislature intended the amendment to apply retroactively. Thus, section 14(a)(2) does not apply in this case.

■ Because section 14(a)(2) does not apply in this case, the trial court was making an original determination of custody in its February 28, 1997, order. When making an initial determination of custody, a court must use the "best interest" standard of section 602 of the Marriage Act (750 ILCS 5/602 (West 1996)). See *In re Koca*, 264 Ill.

App. 3d 291, 294 (1993). Accordingly, we conclude that the trial court correctly applied section 602 of the Marriage Act (750 ILCS 5/602 (West 1996)) to the circumstances of this case.

While we note that other cases have applied section 14(a)(2) of the Parentage Act to orders of parentage entered before the effective date of the amendment, we find them to be distinguishable. See *Kocal v. Holt*, 229 Ill. App. 3d 1023 (1992) (parentage order entered in March 1987); *In re Upmann*, 200 Ill. App. 3d 827 (1990) (parentage order entered on September 19, 1988). Both *Kocal* and *Upmann* assumed, without any analysis or justification, that the amendment creating section 14(a)(2) would apply retroactively. Additionally, *Upmann* found that the parentage order did not address custody, visitation, or support and, by explicitly providing for further proceedings, was not a final order. *Upmann*, 200 Ill. App. 3d at 833-34.

■ Petitioner next contends that the trial court erred by determining that the award of custody to respondent was in D.R.'s best interest. Section 602 of the Marriage Act governs the court's determination of the child's best interest (750 ILCS 5/602 (West 1996)). Among the factors the court is to consider when determining the child's best interest are:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved;

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person;

(7) the occurrence of ongoing abuse *** whether directed against the child or directed against another person; and

(8) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." 750 ILCS 5/602(a) (West 1996).

■ The custody determination is left to the trial court's discretion. Because the determination of the child's best interest is a factually intensive exercise, a reviewing court will defer to the trial court's determination because the trial court is in the best position to evaluate the parties, witnesses, and the credibility and demeanor of each. We will not disturb the trial court's custody determination unless it is against the manifest weight of the evidence. *In re Marriage of Petraitis*, 263 Ill. App. 3d 1022, 1031 (1993). "A judgment is against the manifest weight of the evidence when an opposite conclusion is

apparent, or when the findings appear to be unreasonable, arbitrary or not based upon the evidence." *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d 213, 242 (1996).

■ We have carefully examined the record in this case and conclude that the trial court's determination was not against the manifest weight of the evidence. The trial court gave careful consideration to each of the factors enumerated in section 602(a). Petitioner's assertions that the trial court did not consider D.R.'s wishes or the stability of D.R.'s environment simply are not supported by the record.

Petitioner also contends that the court gave insufficient consideration to petitioner's role as primary caretaker. Petitioner's argument boils down to her own view of how the court should have interpreted the evidence. She faults the trial court for failing to consider testimony that respondent's girlfriend and respondent allow the girlfriend's 14-year-old daughter to come and go as she pleases and for failing to consider the effect of yet another change of physical possession on D.R. We disagree. The record clearly indicates that the trial court carefully considered all of the evidence in conjunction with the relevant factors in determining where D.R.'s best interest lay. We cannot say that the trial court's custody determination was against the manifest weight of the evidence.

Petitioner also contends that the trial court was unfairly prejudiced against her as a result of her outburst during the October 24, 1996, hearing. We reject this contention. The trial court mentioned her outburst in its decision only as an example of the type of negative behavior it found D.R. to be imitating. We find no support for petitioner's contention in the record.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.